FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 12, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

REBECCA P.,[1]

                Plaintiff,

      v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

              Defendant.

No.    4:22-cv-5103-EFS

**ORDER REVERSING THE ALJ'S
DENIAL OF BENEFITS, AND
AWARDING BENEFITS**

Plaintiff Rebecca P. asks the Court to review the ALJ's denial of disability benefits for a second time. Plaintiff claims that her physical and mental impairments following a head injury at work prevent her from being able to sustain fulltime work, and that the ALJ failed to craft an RFC incorporating all her symptoms. As is discussed below, the ALJ erred. Benefits are awarded.

---

[1] To protect the privacy of the social-security Plaintiff, the Court refers to her by first name and last initial or by "Plaintiff." *See* LCivR 5.2(c).

DISPOSITIVE ORDER - 1

## I.    Factual and Procedural Summary

Plaintiff alleges that she became disabled as of September 10, 2011.[2] Her claim was denied initially and on reconsideration.[3] In December 2017, a video administrative hearing was held before ALJ Jesse Shumway.[4] The ALJ found Plaintiff was not disabled.[5] Plaintiff requested review by the Court, and the Court found the ALJ failed to consider Plaintiff's somatic symptom disorder as a severe impairment and remanded the matter for further proceedings.[6]

On remand, the ALJ held a telephonic hearing during which Plaintiff again testified.[7] The ALJ issued a decision denying disability, making the following findings:[8]

- Step one: Plaintiff had not engaged in substantial gainful activity since September 10, 2011, the alleged onset date, through her date last insured of June 30, 2014.

---

[2] AR 187–88, 2092.

[3] AR 113–21.

[4] AR 40-78.

[5] AR 12–39.

[6] AR 2041–82 (EDWA No. 4:19-cv-5206-EFS, ECF No. 18).

[7] AR 1974–88.

[8] AR 1989–2016. Per 20 C.F.R. §§ 404.1520(a)–(g), a five-step evaluation determines whether a claimant is disabled.

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, post-traumatic stress disorder, unspecified anxiety disorder, somatic symptom disorder, cervical degenerative disc disease status post-surgery in September 2010, right rotator cuff impingement status post-surgery in December 2011, and obesity.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform sedentary work except:

  > she was limited to simple, routine, and repetitive tasks; she required a routine, predictable work environment with no more than occasional changes; she could tolerate only superficial contact with the public, co-workers, and supervisors; she could rarely (up to 10 percent of the workday) reach overhead with the right upper extremity; she could frequently handle and finger with both upper extremities but could only perform forceful grasping occasionally; she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; she could never climb ladders, ropes, or scaffolds; she could not have concentrated exposure to hazards (e.g., unprotected heights, moving mechanical parts); and she required a low-stress job (i.e., no assembly-line or other fast-paced work, no management responsibility, and no responsibility for ensuring the safety of others).

- Step four: Plaintiff could not perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform other work that existed in significant

numbers in the national economy, such as waxer, masker, and lens inserter.[9]

When assessing the opinions issued by mental-health professionals, the ALJ gave:[10]

- great weight to the reviewing opinions of Sharon Underwood, PhD, and John Gilbert, PhD.

- greater weight to the reviewing opinion of Nancy Winfrey, PhD, as compared to the treating opinion of Donald Williams, MD, CGP.

- little weight to the examining opinion of Richard Schneider, MD.[11]

The ALJ also found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other

---

[9] AR 1940–57.

[10] Because the ALJ consequentially erred when analyzing Plaintiff's mental-health limitations, the Court need not discuss the ALJ's analysis of the "physical" medical opinions.

[11] *Id.*

evidence in the record.[12] Likewise, the ALJ discounted the lay statement from Plaintiff's sister.[13]

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[14] Plaintiff timely appealed to this Court.

## II.    Standard of Review

The ALJ's decision is reversed only if it is not supported by substantial evidence or uses the wrong legal standard, and such error impacted the nondisability determination.[15] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16]

## III.    Analysis

Plaintiff argues the ALJ erred by giving greater weight to Dr. Winfrey's reviewing opinion than Dr. Williams' treating opinion, and by discounting Plaintiff's reports about her difficulties persisting and maintaining her temper, concentration, and pace for an 8-hour workday. The Commissioner argues that the

---

[12] AR 1947–48.

[13] AR 1955.

[14] AR 1930–36.

[15] 42 U.S.C. § 405(g); *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[16] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

ALJ reasonably found Plaintiff's testimony alleging debilitating concentration deficits inconsistent with the medical record and her testimony at the hearing, and that it was reasonable for the ALJ to give more weight to Dr. Winfrey's opinion because she had a broader view of the record than Dr. Williams. As is explained below, the ALJ's analysis contains error.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff challenges the ALJ's continued assignment of more weight to Dr. Winfrey's reviewing opinion than to Dr. Williams' treating opinion. The Court agrees that the ALJ erred. The ALJ's reasons for giving more weight to Dr. Winfrey's opinion than to Dr. Williams' opinion are not specific and legitimate reasons supported by substantial evidence.

1.    <u>Dr. Winfrey's and Dr. Williams' opinions</u>

Dr. Winfrey reviewed the medical record and testified at the 2017 hearing. At the hearing, Dr. Winfrey opined that Plaintiff's ability to understand, remember, and apply information was unimpaired; her ability to concentrate, persist, and maintain pace was mildly impaired; her ability to adapt and manage herself was mildly impaired, and her ability to interact with others was moderately impaired.

In comparison, Dr. Williams was Plaintiff's treating psychotherapist for more than a decade, meeting about twice a month for the first several years and

then about once a month.[17] In February 2014, after four years of treatment, Dr. Williams completed a Psychiatric Opinion Questionnaire for Washington Department of Labor and Industries (L&I) purposes. Dr. Williams opined that Plaintiff could maintain focused productive activity for about 4 hours per day.[18]

      2.   <u>Standard</u>

When Plaintiff filed for disability, the ALJ's consideration of the medical-source opinions depended on the nature of the medical relationship.[19] Generally, the ALJ was to give more weight to the opinion of a treating physician than to an examining physician's opinion, and both treating and examining opinions were to be given more weight than a reviewing physician's opinion.[20] If a treating physician's opinion was contradicted by another physician's opinion, the ALJ must provide specific and legitimate reasons, supported by substantial evidence, for discounting the treating physician's opinion.[21]

---

[17] *See, e.g.*, AR 1119 (Dec. 10, 2009); AR 2305 (Oct. 14, 2010).

[18] AR 1767–69. In October 2015, after the date last insured, Dr. Williams completed a Mental Residual Functional Capacity Assessment, opining that Plaintiff was moderately and markedly limited in several non-exertional abilities. AR 668–69. The ALJ did not discuss this post-period opinion.

[19] *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

[20] *Id.*; *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

[21] *Lester*, 81 F.3d at 830.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

3. <u>The ALJ's findings</u>

The ALJ explained that he gave more weight to Dr. Winfrey's opinion than to Dr. Williams' opinion because 1) Dr. Williams did not provide a detailed response supporting his opinion whereas Dr. Winfrey provided a cogent explanation; 2) Dr. Winfrey reviewed the entire record whereas there was no evidence that Dr. Williams reviewed the entire record; and 3) it was "unreasonable to conclude that Dr. Williams invested the same deliberation as Dr. Winfrey in assessing the claimant's functional capacity."[22] The Court addresses each of these reasons.

4. <u>Analysis</u>

    a. The ALJ's finding that Dr. Winfrey provided a more cogent explanation for her opinion than Dr. Williams did for his opinion is not supported by substantial evidence or meaningful explanation.

The ALJ is to consider the supporting explanation provided by the medical source and the extent of the relevant objective medical evidence supporting the opinion.[23] For treating providers, the ALJ is to consider the information provided

---

[22] AR 1951.

[23] 20 C.F.R. § 404.1527(c); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is conclusory or inadequately supported).

on the opinion form itself, the provider's treatment notes, and the purpose and extent of the treating relationship.[24]

Here, the ALJ found Dr. Winfrey "offered specific references to the record and . . . provided a cogent explanation of why the evidence supported her opinion," and that Dr. Williams failed to "provide a detailed response about the objective findings supporting his opinion."[25] As is explained below, Dr. Winfrey's 8-page testimony identifies that the basis for her opinion is: 1) Plaintiff's cognitive test results were normal, 2) Plaintiff attended and traveled to her daughter's soccer games, 3) she did well in college courses, and 4) she was described during one treatment session as articulate and analytical. In comparison, Dr. Williams' opinion is based on his many years of treating Plaintiff and his review of—and reactions to—the consultative psychological examinations of Kenneth Muscatel, PhD, and David Bachman, PsyD.[26]

### i.    Cognitive test results

There was an initial concern that Plaintiff's mental-health difficulties were due to a cognitive injury resulting from the workplace head trauma.[27] However, as

---

[24] 20 C.F.R. § 416.920c(c)(3); *Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4 (9th Cir. 2017); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

[25] AR 1951.

[26] AR 49–56.

[27] AR 1207, 1263.

Dr. Kenneth Muscatel, who conducted a neuropsychological examination of Plaintiff in October 2009, reported, Plaintiff's mental-health limitations related to her depression and emotional symptoms.[28] Dr. Williams agreed with Dr. Muscatel's assessment that Plaintiff's difficulties were primarily psychiatric rather than organic, as did Dr. David Bachman, who conducted psychological evaluations in September 2011, July 2012, and February 2013.[29]

Yet, because Plaintiff performed well on cognitive examinations, Dr. Winfrey deemed Plaintiff's mental-health impairments to be only mildly limiting, or moderately limiting in regard to interacting with others. However, cognitive deficiencies did not cause Plaintiff's limitations. Plaintiff's mental severe impairments were major depressive disorder, PTSD, anxiety disorder, and somatic symptom disorder. Therefore, that Plaintiff performed well during single-day cognitive exams does not serve as a specific and legitimate reason supported by substantial evidence to give more weight to Dr. Winfrey's opinion than to Dr. Williams' opinion.[30]

---

[28] AR 756.

[29] AR 1307, 585, 819, 831.

[30] *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (finding the ALJ erred by rejecting the claimant's symptoms resulting from anxiety, depressive disorder, and PTSD on the basis that claimant performed cognitively well during examination and had a generally pleasant demeanor).

*ii.    Soccer games*

Second, both Dr. Winfrey and the ALJ failed to meaningfully explain why Plaintiff's ability to travel to and attend her daughter's soccer games was more consistent with Dr. Winfrey's opinion that Plaintiff was only mildly limited in her ability to sustain concentration, persistence, and pace than to Dr. Williams' opinion that Plaintiff lacked the ability to sustain fulltime work. The record does not reflect that Plaintiff's travel to and attendance at her daughter's soccer games was equivalent to a fulltime job at the crafted RFC. Without meaningful explanation by either Dr. Winfrey or the ALJ, Plaintiff's observation of her daughter's soccer games does not serve as a legitimate and specific reason, supported by substantial evidence, to give more weight to Dr. Winfrey's opinion than to Dr. Williams' opinion.

*iii.    College courses*

Third, Dr. Winfrey highlighted that Plaintiff did very well at college. However, Plaintiff's success during two quarters of community college must be considered along with the fact that Plaintiff only took a single course each quarter—not a course load equivalent to fulltime work—and she was allowed additional time to take exams in a distraction-free environment.[31] For instance, in the spring of 2013, she took a math/accounting class at the encouragement of her treating providers. Her treating ARNP "encouraged her to do this but not to over-

---

[31] AR 1477–79.

DISPOSITIVE ORDER - 11

reach on her first class back at college. She should certainly start slow and work her way up."[32] Likewise, Dr. Williams stated:

> Her ability to interact and communicate has improved enough to permit her to begin a course at Columbia Basin Community College—Math 96—a step that was out of reach even 6 months ago. My hope and plan is that if [Plaintiff] is able to succeed at one course at the community college, that she can then increase her academic load to 2 or 3 courses, ultimately building her confidence and interpersonal skills to the point where she can return to work.[33]

Plaintiff did well in her math/accounting class.[34] Then, in the fall of 2013, she took another single course, Spanish, and earned an A.[35] She studied a couple hours a day because her "learning efficiency" was not what it used to be.[36] Then, when she attempted to take two simultaneous courses the next quarter, she had to withdraw from these classes because she had a significant decline in mental health when her medication lapsed due to insurance issues.[37] Even if Plaintiff successfully took two college courses simultaneously, neither Dr. Winfrey nor the ALJ meaningfully explained how taking such a light college course load was consistent with and supported Dr. Winfrey's opinion that Plaintiff could sustain a full-time job.

------

[32] AR 1036.

[33] AR 1482.

[34] AR 1512, 1531.

[35] AR 1043, 1044, 1512, 1517.

[36] AR 647; *see also* AR 1049, 1540,1524, 1526, 1528.

[37] AR 1048, 1049, 1572.

Dr. Winfrey and the ALJ focused too heavily on Plaintiff's cognitive abilities rather than the limitations she experienced due to her depression, anxiety, pain, somatic symptom disorder, and medication side-effects.

### iv.    Observation during one treatment session

Fourth, Dr. Winfrey relied on the fact, that on one occasion during a treatment session with Dr. Williams, Plaintiff was described as articulate and analytical.[38] Dr. Winfrey erroneously referred to this "articulate and analytical" note as being from May 2014, but it was authored in May *2015*, which is after the date last insured.[39] More critically, Dr. Winfrey "cherry picked" this statement from Dr. Williams' record. Although Dr. Williams stated that Plaintiff "was articulate, analytical, and relatively emotionally modulated today," that session he also observed Plaintiff with low energy, mild (sometimes moderate) irritability/temper, frustrated affect, mildly depressed mood, poor memory and concentration with some improvement, and anhedonia.[40] He also wrote:[41]

---

[38] AR 52.

[39] AR 52, 1687.

[40] AR 1687.

[41] AR 1687.

1

2

3

4

> The results of the psychiatric IME have not yet been returned. She recalled that the psychiatrist told her that he could have told her that she was not going to be able to return to work a year earlier, and that (as she understood it) that I was functioning as her advocate. I told her that we hoped that she might be able to RTW, and that as her treating psychiatrist it was my responsibility to see if treatment might permit a RTW. I said that although she might be able to work part-time at some point in the future, it was clear now that she would not be able to work on a full-time basis.

When the relied-on treatment record of Dr. Williams is considered in full, it does

not serve as substantial evidence to support the ALJ's decision to give greater

weight to Dr. Winfrey's opinion than to Dr. Williams' opinion.

                    v.      *Dr. Williams' explanation*

Finally, the ALJ found Dr. Williams did not support his opinion contained on

the L&I Psychiatric Opinion Questionnaire form with a detailed explanation and

therefore the ALJ gave more weight to Dr. Winfrey's opinion. The ALJ accurately

pointed out that on the form Dr. Williams merely stated that his opinion that

Plaintiff was unable to maintain focused work for more than 4 hours was

supported by:[42]

> ANSWER:
> Repeated clinical assessment
> Multiple neuropsychological evaluations
>    (Dr. Muscatel + Dr. Bachman)
> Multiple serial MMPI-2 / MMPI-2-RF
>    tests I have administered +
> interpreted

But this answer should have pointed the ALJ to the hundreds of pages of

Dr. Williams' treating notes and reports to L&I spanning several years; records

---

[42] AR 1767.

which show that Plaintiff's mental-health symptoms waxed and waned.[43] For instance, below is a summary of some of Dr. Williams' notes that indicate both waxing and waning symptoms:

- September 21, 2011: Dr. Williams agrees with Dr. Bachman's conclusion that Plaintiff's problems are mainly psychiatric rather than organic, and that he observed Plaintiff to be irritable, with a depressed affect and anhedonia.[44]

- September 29, 2011: Dr. Williams notes that Plaintiff exhibited moderate irritability/temper, she was tearful during the session, she had depressed affect, and her anhedonia was increasing.

- November 30, 2011: Dr. Williams observes Plaintiff with mild to moderate irritability/temper, with an anxious and worried affect, and stable anhedonia.[45]

- January 5, 2012: Dr. Williams notes that Plaintiff has regressed because of an insurance delay with getting medication, with moderate irritability/temper, crying, almost inaudible speech, and depressed and angry affect.[46]

---

[43] *See, e.g.*, AR 1083–1781.

[44] AR 1306–08.

[45] AR 1335.

[46] AR 575.

- March 8, 2012: Dr. Williams states that Plaintiff "continues to be quite depressed, as has been evident clinically; this is also borne out psychometrically."[47]

- August 15, 2012: Dr. Williams observes that Plaintiff's self-control is improving, but she is tearful during the appointment, with a depressed affect and genuine interaction; "her very limited energy is a significant limiting factor in terms of [return to work] prognosis."[48]

- November 29, 2012: Dr. Williams notes that Plaintiff's energy improved, she was mildly depressed, she had limitations in both memory and concentration due to increased cervical pain, and migraines continue.[49]

Moreover, the record contains Dr. Williams' reactions to the psychological examination reports of Dr. Bachman and Dr. Muscatel.[50] In addition, Dr. Williams

---

[47] AR 1366–67.

[48] AR 1411–12.

[49] AR 1439–40.

[50] *See* AR 1306 (summarizing Dr. Bachman's September 2011 test results); AR 1366 (stating that Dr. Bachman's March 2012 testing showed improvement of Plaintiff's intellectual functioning but that it is clinically evident that Plaintiff continues to be quite depressed); AR 1460 (stating that Dr. Bachman's recent test showed progress in intellectual functioning, suggesting that she could take a

spoke with Dr. Muscatel and they discussed their findings, with both agreeing that, notwithstanding full effort on cognitive testing, Plaintiff still showed severe depression.[51] On this record, the ALJ failed to meaningfully explain how the hundreds of pages of Dr. Williams' treatment notes and L&I reports, which contained his reactions to the neuropsychological evaluations provide a less cogent explanation for his opinion than Dr. Winfrey's largely conclusory testimony did for her opinion.

In addition, the ALJ erroneously stated, "Dr. Williams apparently concluded treatment of the claimant in March 2014," citing to a February 13, 2014 report from Dr. Williams to L&I in relation to Plaintiff's workers compensation claim.[52]

---

college course at this time, but that she continues to manifest significant depression and so Dr. Bachman recommended continued treatment).

[51] AR 1263.

[52] AR 1564. After suffering the workplace injury, Plaintiff filed a workers compensation claim with L&I. L&I works with independent medical examiners to gather information to process claims and determine if/when the worker reaches maximum medical improvement. Once a worker's condition has reached maximum medical improvement, the State cases paying for medical care. *See generally* Wash. State Dep't of L&I Medical Examiners' Handbook, available at https://lni.wa.gov/forms-publications/F252-001-000.pdf (July 2023 update); *see also*

DISPOSITIVE ORDER - 17

1

2

3

4

5

However, Dr. Williams continued to treat Plaintiff after March 1, 2014. After that date, L&I closed the workers compensation claim because L&I found that Plaintiff had reached maximum medical improvement related to her workplace injury. Therefore, Plaintiff privately paid (or with insurance) for Dr. Williams' treatment through at least October 2020.[53]

6

7

8

9

10

11

12

13

14

15

16

The ALJ also found Dr. Williams' supporting explanation lacking because he did not explain why he disagreed with Dr. Schneider's December 2013 opinion.[54] Dr. Schneider conducted an independent medical examination for L&I purposes to determine if Plaintiff had reached maximum medical improvement relating to her workplace injury.[55] Dr. Schneider stated that he "could find no evidence of psychiatric obstacles to her returning to work" and "[n]o accommodations or restrictions of a psychiatric nature in the workplace or in the classroom would be necessary."[56] Yet, Dr. Schneider also wrote, "the aggravation of her longstanding recurrent depressive disorder that was already being treated with antidepressants at the time of the industrial injury has become permanent" and she would

17

18

19

20

21

22

23

WAC 296-20-01002 (defining terms, including "proper and necessary" health care services and "maximum medical improvement").

[53] AR 1566-70, 2305–06.

[54] AR 1950.

[55] AR 645–58.

[56] AR 656.

DISPOSITIVE ORDER - 18

"continue to need psychotropic medications" as prescribed by Dr. Williams.[57]

Dr. Schneider determined that Plaintiff's aggravation of her depression had

become permanent and was not on "trajectory to cure."[58] Dr. Williams increased

Plaintiff's L&I workers compensation program Category rating from 2 to 3 due to

her "residual symptomatology and her need for more psychotropic medications

than she was taking at the time of injury."[59] Per WAC 296-20-340, a Category 3

mental-health impairment involves:

> Episodic loss of self-control with risk of causing damage to the
> community or self; moments of morbid apprehension; periodic
> depression that disturbs sleep and eating habits or causes loss of
> interest in usual daily activities but self-care is not a problem; fear-
> motivated behavior causing mild interference with daily life, frequent
> emotogenic organ dysfunctions requiring treatment; obsessive-
> compulsive reactions which limit usual activity; periodic losses of
> physical function from hysterical or conversion reactions; disturbed
> perception in that patient does not always distinguish daydreams
> from reality; recognizes his fantasies about power and money are
> unusual and tends to keep them secret; thought disturbances cause
> patient to fear the presence of serious mental trouble; deviant social
> behavior can be controlled on request; exhibits periodic lack of
> appropriate emotional control; mild disturbance from organic brain
> disease such that a few work day activities require supervision.

That Dr. Schneider increased Plaintiff's mental-health rating to a Category 3 but

found that she did not need workplace accommodation of a psychiatric nature

appears inconsistent. Upon reviewing Dr. Schneider's conclusions, Dr. Williams

---

[57] AR 656–57.

[58] AR 655.

[59] AR 657.

wrote: "I disagree with the psychiatric IME conclusion [that Plaintiff is at maximum medical improvement for her depression]; I have responded to that effect with reasons on the form provided, and will certainly expand on the basis for my non-concurrence if requested to do so."[60] Dr. Williams believed that Plaintiff's mental health was showing improvement, that she was in need of further psychiatric treatment, and thus her condition should not be considered fixed and stable for L&I purposes, contrary to Dr. Schneider's finding.[61] Dr. Williams' brief explanation, along with his treatment notes and L&I reports, explains the basis for his disagreement with Dr. Schneider's opinion.

### vi.    Conclusion

The ALJ's first finding that Dr. Winfrey's opinion was more cogently explained than Dr. Williams' opinion is not a specific and legitimate finding supported by substantial evidence. The normal cognitive test results were largely irrelevant, Dr. Winfrey's and the ALJ's reliance on Plaintiff's attendance at soccer games was not meaningfully explained, and substantial evidence does not support relying on Plaintiff's good grades in her two college courses or that she was described as articulate and analytical during one of Dr. Williams' treatment sessions in May 2015. In comparison, Dr. Williams' treating opinion was supported

---

[60] AR 1549, 1548.

[61] AR 1768.

by his treatment notes and consistent with the psychological examinations of

Dr. Muscatel and Dr. Bachman.

> b.    The ALJ's decision to discount Dr. Williams' treating opinion
> because Dr. Winfrey had reviewed the entire medical record is
> not a legitimate decision supported by substantial evidence.

An ALJ may give more weight to an opinion that is based on more record

review and supporting evidence.[62] Yet, an ALJ is to also consider the treating

relationship and the familiarity of the provider with the claimant and her

symptoms.[63]

Here, notwithstanding Dr. Winfrey's review of the medical records, she did

not recognize that Plaintiff had been diagnosed with somatic symptom disorder.

Thus, her opinion as to Plaintiff's limiting symptoms stemmed only from those

impairments that she considered diagnosed, which did not include somatic

---

[62] 20 C.F.R. § 404.1527(c); *Lingenfelter*, 504 F.3d at 1042 (recognizing that the ALJ

is to consider the consistency of the medical opinion with the record as a whole and

assess the amount of relevant evidence that supports the opinion).

[63] 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated

you and the more times you have been seen by a treating source, the more weight

we will give to the source's medical opinion. When the treating source has seen you

a number of times and long enough to have obtained a longitudinal picture of your

impairment, we will give the medical source's medical opinion more weight than we

would give it if it were from a nontreating source.").

symptom disorder. The ALJ stated, "this error does not significantly undermine the overall weight her testimony merits."[64] Yet, Dr. Williams, Dr. Bachman, and Dr. Palmatier each recognized the significant impact that Plaintiff's somatic symptom disorder had on her functioning.[65] The ALJ failed to meaningfully explain why Dr. Williams' observations and findings during at-least monthly treatment sessions over the course of several years, along with his review of the consultative psychological examination reports prepared by Dr. Muscatel, Dr. Montgomery, Dr. Bachman, and Dr. Schneider, provided an insufficient basis for his opinion, as compared to Dr. Winfrey's review of the records. Given the nature and extent of Dr. Williams' treating relationship, it was not reasonable for the ALJ to give more weight to Dr. Winfrey's opinion because she had reviewed the entire file, which was mostly comprised of mental-health records that were either prepared by or reviewed by Dr. Williams, particularly given that Dr. Winfrey did not appreciate that Plaintiff had been diagnosed with somatic symptom disorder.

c.    The ALJ's finding that Dr. Williams did not invest the same deliberation as Dr. Winfrey in assessing Plaintiff's RFC is not a legitimate finding supported by substantial evidence.

As mentioned above, the ALJ is to consider the supporting explanation provided by the medical source, the extent of the relevant objective medical evidence supporting the opinion, the nature of the relationship the claimant has

---

[64] AR 1952.

[65] AR 1324, 1303, 1412, 963, 591, 559–62.

with the medical source, and the extent that the medical source is familiar with the information in the case file.[66]

Here, the ALJ did not inquire with Dr. Winfrey as to the amount of time that she spent reviewing the file. Dr. Winfrey's eight-page testimony does not shed insight as to the depth of her deliberation because her testimony was largely conclusory and, as mentioned above, relied on Plaintiff's normal cognitive testing, that Plaintiff attended her daughter's soccer games, that she succeeded in two community college courses, and that she was described on one occasion as being articulate and analytical. As is explained above, this relied-on evidence was either irrelevant, "cherry-picked," or insufficient to serve as substantial evidence to support the finding. Also, critically, Dr. Winfrey's review failed to appreciate that Plaintiff had been diagnosed with somatic symptom disorder during the relevant period.

Substantial evidence fails to support the ALJ's finding that Dr. Williams did not "invest[] the same deliberation as Dr. Winfrey in assessing the claimant's functional capacity."[67]

5.    Conclusion

The ALJ failed to provide specific and legitimate reasons supported by substantial evidence for giving more weight to Dr. Winfrey's reviewing opinion

---

[66] 20 C.F.R. § 404.1527(c).

[67] AR 1951.

than to Dr. Williams' treating opinion. Because Dr. Williams' opined limitations were work preclusive, this error was consequential.

**B.    Plaintiff's Symptom Reports: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred by failing to make clear and convincing findings about the credibility of her reported pain and mental-health symptoms. The Court agrees.

1.    <u>Plaintiff's reported symptoms[68]</u>

Plaintiff reports disability following a workplace head injury in 2009.[69] The record contains hundreds of medical records, many of which summarize the symptoms Plaintiff reported during those appointments. In December 2015, Plaintiff reported in her Adult Function Report that her abilities vary depending on her daily pain levels, her medication makes her groggy, she does not handle stress well, she cries a lot, and she has trouble concentrating, with words, with short-term memory, and curtailing negative comments.[70]

---

[68] The Court's symptom-report analysis focuses on the ALJ's consideration of Plaintiff's reports about her mental-health symptoms, pain, and medication side-effects.

[69] AR 320.

[70] AR 257–64.

During the December 2017 administrative hearing, Plaintiff testified that her pain limits her, some days are worse than others, she has a hard time understanding questions, she rereads directions multiple times, and she experiences dizziness on occasion.[71]

During the administrative hearing in December 2020, the ALJ asked Plaintiff about her college courses.[72] Plaintiff was unable to remember when she started college, but she shared that she took accounting and Spanish and that some class sessions were online and others in-person. She also testified that her Spanish class probably had less than 20 students, she used a rolling bag for school, she had about a 2.20 GPA, and she took simple notes in class because she was not able to process the teacher's lecture quickly enough to take detailed notes.[73] She shared that she ultimately dropped out of college before she earned her AA. Plaintiff acknowledged that she has a hard time remembering specifics from the relevant period.[74] She testified that her medication causes drowsiness and insomnia, she has difficulty following instructions, she forgets to do simple tasks, and she still suffers from pain in her neck.[75]

---

[71] AR 57–66.

[72] AR 1977–80.

[73] AR 1974–84.

[74] AR 1980.

[75] AR 1984, 1986–87.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

2.    Standard

The ALJ must identify what symptom claims are being discounted and

clearly and convincingly explain the rationale for discounting the symptoms with

supporting citation to evidence.[76] If an ALJ does not articulate specific, clear, and

convincing reasons to reject a claimant's symptoms, the corresponding limitations

must be included in the RFC.[77]

Factors to be considered by the ALJ when evaluating the intensity,

persistence, and limiting effects of a claimant's symptoms include: 1) daily

activities; 2) the location, duration, frequency, and intensity of pain or other

symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type,

dosage, effectiveness, and side effects of any medication the claimant takes or has

taken to alleviate pain or other symptoms; 5) treatment, other than medication, the

claimant receives or has received for relief of pain or other symptoms; 6) any non-

treatment measures the claimant uses or has used to relieve pain or other

---

[76] *Id.* (quoting *Lester*, 81 F.3d at 834, and *Thomas v. Barnhart*, 278 F.3d 947, 958

(9th Cir. 2002) (requiring the ALJ to sufficiently explain why he discounted

claimant's symptom claims)).

[77] *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) ("[T]he ALJ failed to

provide clear and convincing reasons for finding Lingenfelter's alleged pain

and symptoms not credible, and therefore was required to include these limitations

in his assessment of Lingenfelter's RFC.").

symptoms; and 7) any other factors concerning the claimant's functional

limitations and restrictions due to pain or other symptoms.[78] The ALJ is instructed

to "consider all of the evidence in an individual's record" to "determine how

symptoms limit ability to perform work-related activities."[79]

### 3.    The ALJ's findings

The ALJ found that Plaintiff's statements about her symptoms were not

"entirely consistent with the medical evidence and other evidence in the record"

because 1) they were inconsistent with the objective medical evidence; 2) her

testimony during the 2017 and 2020 hearings focused on her then-current

symptoms and not about her symptoms during the period at issue; 3) she reported

improved depression symptoms; and 4) she took college-level courses.[80]

### 4.    Analysis

a.    Substantial evidence fails to support the ALJ's finding that
Plaintiff's symptom reports were inconsistent with the
longitudinal medical record.

Objective medical evidence—signs, laboratory findings, or both—is a

relevant factor for the ALJ to consider when assessing a claimant's symptoms.[81] An

---

[78] SSR 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. § 404.1529(c).

[79] SSR 16-3p, 2016 WL 1119029, at *2.

[80] AR 1948–49.

[81] 20 C.F.R. § 404.1502(f); 3 Soc. Sec. Law & Prac. § 36:26, Consideration of

objective medical evidence (2019).

ALJ may validly consider discrepancies between a claimant's reported symptoms and the observations of treatment providers.[82] While an ALJ may not "reject a claimant's subjective complaints based *solely* on lack of medical evidence to *fully corroborate* the alleged severity of pain," the ALJ may discount subjective complaints that are *inconsistent* with the objective medical evidence, so long as the ALJ explains why the objective medical findings are inconsistent with the claimant's complaints.[83]

Here, the ALJ failed to meaningfully explain why the relevant objective medical findings were inconsistent with Plaintiff's reported difficulty sustaining concentration and persisting for a full workday due to her depression, anxiety, somatic symptom disorder, pain, and medication side-effects. Instead, the ALJ cited to Plaintiff's improved cognitive and memory test scores. However, Plaintiff does not claim that her reported difficulty sustaining concentration and persisting are related to cognitive declines. Likewise, Dr. Williams and Dr. Bachman opined that Plaintiff's chronic depression and somatic symptom disorder impact her

---

[82]  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

[83]  *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) (quoting *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (emphasis added in *Smartt*)).

functioning.[84] The ALJ may not discount Plaintiff's reported symptoms based on irrelevant normal medical findings.[85]

Second, the ALJ relied on Dr. William's December 10, 2009 note[86] that Plaintiff had improved cognitive clarity and reduced emotional lability. This improvement, however, must be read in the full treatment context, which is that Plaintiff's symptoms waxed and waned. For instance, even with medication, Dr. Williams' notes reflect:

- February 2012: observed with moderate irritability, low energy, almost inaudible speech, moderately to severely depressed, and reported daily crying.[87]

- March 2012: although Plaintiff's intellectual functioning is improving, Plaintiff appeared depressed and did not have the stamina to work an 8-hour day.[88]

---

[84] AR 828, 831, 1011, 1034, 1307 (Dr. Bachman identifying that Plaintiff's severe emotional issues, resulting from depression, anxiety, and a pain disorder, must be addressed if she is to recover from her workplace injury.).

[85] *See Ghanim*, 763 F.3d at 1164.

[86] AR 1119–20.

[87] AR 581–82.

[88] AR 1373.

- May 2012: observed with low energy, tearing up, and mildly depressed but with good interaction.[89]

Consistent with Dr. Williams' observations, Dr. Bachman also found that, even while on medication, Plaintiff had severe emotional issues.[90] A complete review of the medical record reveals that the ALJ placed undue weight on occasional waning symptoms.

Third, the ALJ referred to the largely normal test results during Dr. Schneider's consultative psychiatric evaluation for L&I benefits in November 2013. The ALJ highlighted that "Dr. Schneider's opinion measures the claimant's functioning during a waning of symptoms but does not accurately depict her level of limitation overall."[91] The ALJ needed to more meaningfully explain how Dr. Schneider's observations during a period of waning symptoms was a clear and convincing reason to discount Plaintiff's reported waxing symptoms.

Finally, the ALJ determined that the crafted RFC accounts for Plaintiff's poor memory, concentration, and temper issues during periods of waxing symptoms because the RFC limits "her to simple, routine, and repetitive tasks in a predictable, low-stress work environment with no more than superficial contact

---

[89] AR 1390.

[90] AR 1460, 828, 591.

[91] AR 1950.

with others.[92] But the ALJ fails to meaningfully explain how such limitations allow

her to sustain fulltime work given her observed fatigue, depression, irritability,

crying, and memory difficulties.[93]

      b.    The ALJ's decision to discount Plaintiff's symptom reports
because she offered little testimony about her symptoms during
the relevant period is not a clear and convincing reason
supported by substantial evidence to discount her symptom
reports.

The ALJ noted:

two important observations from the claimant's testimony at both the
2017 and 2020 hearings that help explain why I continue to discount
some of her reported symptoms. She primarily phrased her testimony
in the present sense, suggests she was responding to questions about
her symptoms as they currently occurred. When I asked specific
questions about the period relevant to this decision, she often
vacillated or failed to directly answer the questions, and she
ultimately admitted she had few specific memories from the period in
question. Her use of the present tense and inability to remember
specifics of how she functioned between her amended alleged onset
date and date last insured strongly suggest that her reported
symptoms during those hearing merit little weight when determining
how she functioned during the relevant period.[94]

---

[92] AR 1952.

[93] *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he

ALJ is responsible for translating and incorporating clinical findings into a succinct

RFC."); *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ

to build an accurate and logical bridge from the evidence to her conclusions so that

we may afford the claimant meaningful review of the SSA's ultimate findings.").

[94] AR 1948.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

     While the ALJ need not have considered administrative-hearing testimony that he deemed unreliable due to the passage of time, the ALJ failed to convincingly and clearly explain why he did not instead consider Plaintiff's symptom reports in her Adult Function Report or to treating providers or consultative examiners during the relevant period. The record contains more than 100 medical records, including counseling records, physical therapy records, consultative examination reports, and other treatment records during the relevant period. For instance, in September 29, 2011, Plaintiff reported to Dr. Williams, "I was crying and feeling like an idiot."[95] The next month, she told Dr. Williams that she had "difficulty following what some people were saying at times."[96] During her psychological evaluation with Dr. Bachman in March 2012, Plaintiff reported reduced memory, migraines, neck/shoulder pain, disliking being around people, being depressed, and difficulties housecleaning, laundry, and cooking.[97]

     Plaintiff's reported difficulties in her Activity Function Report are largely consistent with those she testified to during the administrative hearings. In addition, Plaintiff reported difficulties with memory—therefore, her memory difficulties during the hearings in 2017 and 2020, years after the at-issue period

---

[95] AR 1312.

[96] AR 1318.

[97] AR 556–66.

DISPOSITIVE ORDER - 32

ended in June 2014, were consistent with, rather than inconsistent with, her reported symptoms.

That Plaintiff did not testify during the administrative hearings about her symptoms during the relevant period to the extent the ALJ would prefer was not a clear and convincing reason to discount the symptoms she reported in her Adult Function Report and to medical providers.

>    c.    The ALJ did not fully consider the entire record when relying on Plaintiff's reports of improved concentration and memory.

The ALJ commented that Plaintiff "reported significantly improved concentration with medication."[98] Reports of improvement "must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms," as well as with an awareness that "improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."[99]

The ALJ relies on Dr. Bachman's examination report, which summarizes Plaintiff's medical records, including Dr. Williams' treatment notes from December 2009, to establish improvements in concentration and memory inconsistent with Plaintiff's reported symptoms.[100] In December 2009, Dr. Williams noted that

---

[98] AR 1952.

[99] *Garrison*, 759 F.3d at 1017 (cleaned up).

[100] AR 1952; *see also* AR 650, 1119.

Plaintiff reported that her increase in methylphenidate made a "huge difference" in her ability to complete her schoolwork, he observed her to have improved/reduced irritability with lucid, better organized speech, improved concentration and memory, and partial anhedonia.[101] However, this improvement in Plaintiff's symptoms was not so great that Dr. Williams considered Plaintiff able to sustain a full workday. Dr. Williams' treatment records and L&I reports consistently state that Plaintiff is unable to sustain a full workday:

- March 20, 2011: "she is unable to work. At present there is no way that she could work even on a part time basis."[102]

- March 8, 2012: "she may be able at some point in the future to return to work in some capacity, even if only part time."[103]

- May 31, 2012: "her very limited energy is a significant limiting factor in terms of [return to work] prognosis."[104]

- January 21, 2013: "At this point she is not even capable of part time work in a gainful manner."[105]

---

[101] AR 1119–20.

[102] AR 1258.

[103] AR 1366.

[104] AR 1393.

[105] AR 1454.

Although Dr. Williams' opinion that Plaintiff is unable to return to work is not binding on the ALJ, such an opinion reflects that Dr. Williams did not consider Plaintiff's improvement to be complete or sustained. Therefore, the ALJ erred by giving undue weight to Dr. Williams' note about improved symptoms.

> d.    That Plaintiff took two singular college-level courses was not a clear and convincing reason supported by substantial evidence to discount her reported difficulty persisting for a full workday.

The ALJ found that Plaintiff's participation in college-level courses, even with accommodation, reflected that she could perform the reasoning level required of the identified occupations at step 5. However, the ALJ failed to fully consider that Plaintiff's parttime college participation was not consistent with the persistence required for a fulltime job.

### 5.    Conclusion

The ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's reported inability to persist for a full workday due to her pain, depression, anxiety, somatic symptom disorder, and medication side-effects.

## C.    Reversal: Plaintiff shows an award of benefits is appropriate.

Remand for further administrative proceedings is the usual course when a harmful error occurs in the administrative proceeding, except in rare

circumstances.[106] This is a rare circumstance where an award of benefits is appropriate.

First, the ALJ failed to provide legally sufficient reasons for rejecting the treating medical opinion of Dr. Williams and Plaintiff's symptom reports.[107]

Second, further administrative proceedings will offer no benefit.[108] The Commissioner has twice conducted administrative hearings and issued decisions. The at-issue period is now almost a decade past. "Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."[109] It is appropriate to credit as true Dr. Williams' opinion.

Third, when Dr. Williams' medical opinion is fully credited, the vocational expert's testimony requires a finding that Plaintiff is disabled.[110] Plaintiff would be unable to sustain fulltime work. An award of benefits is warranted.

---

[106] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

[107] *See id.* at 1100–01.

[108] *See id.*

[109] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).

[110] *See Treichler*, 775 F.3d at 1101.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## IV.    Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1. The Clerk's Office shall enter **JUDGMENT** in favor of Plaintiff
   REVERSING and REMANDING the matter to the Commissioner of
   Social Security for immediate calculation and award of benefits.

2. All pending dispositive briefs, **ECF Nos. 11 & 15**, are **TERMED**.

3. The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to file this Order,

provide copies to all counsel, and close the file.

**DATED** this 12<u>th</u> day of July 2023.

_Edward F. Shea_
_____
EDWARD F. SHEA
Senior United States District Judge